IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| GREGORY LOUIS THORNTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 124-198 |
| | ) | |
| PRACTITIONER CROSBY; DOCTOR HOLLAND; NURSE CLARK; NURSE MALONE; NURSE STONE; NURSE PURDIE; and CHARLES B. WEBSTER DETENTION CENTER, | ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

_____

**O R D E R**

_____

Plaintiff, detained at Charles B. Webster Detention Center in Augusta, Georgia, has submitted to the Court for filing a complaint brought pursuant to 42 U.S.C. § 1983. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Because he is proceeding IFP, Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984) (*per curiam*); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*).

I.    **MOTION TO AMEND**

By letter to the Clerk of Court, Plaintiff asks to "make a change to a defendant[']s name" in the complaint from Defendant Nurse Pearly to Defendant Nurse Purdie. (Doc. no. 8.) The Court construes the letter as seeking leave of court to amend the complaint. Plaintiff is cautioned that, in the future, if Plaintiff wants the Court to take any action in this case, he

must file a properly captioned motion and may not simply write letters to the Court.  See In re Unsolicited Letters to Federal Judges, 120 F. Supp. 2d 1073, 1074 (S.D. Ga. 2000) ("[I]f a litigant seeks judicial action of any sort . . . , it must be contained within a *motion* arising from a properly filed lawsuit." (citations omitted)).

The Court **GRANTS** Plaintiff's motion to amend.  (Doc. no. 8.)  For the sake of judicial efficiency, rather than require Plaintiff to submit an amended complaint, the Court **DIRECTS** the **CLERK** to update the docket to reflect the correct spelling of Defendant Nurse Pearly's name as Nurse Purdie, consistent with the above caption.  See Transcon. Ins. Co. v. L.F. Staffing Servs., Inc., 2008 WL 11333664, at * 4 (S.D. Fla. Aug. 13, 2008) ("[A] mere misnomer . . . may be disregarded where it is fairly certain that no prejudice has resulted . . . ."); see also Williams v. DeKalb Cnty. Gov't, No. 1:12-CV-0705-RLV-AJB, 2014 WL 12997819, at *4 (N.D. Ga. June 30, 2014) (replacing misnamed Defendant with proper name pursuant to Fed. R. Civ. P. 15 and noting "it is not necessary for Plaintiff to amend his complaint to achieve his goal").  All references in Plaintiff's complaint to a "Nurse Pearly" shall be construed as referring to Nurse Purdie.

## II.    SCREENING THE COMPLAINT

Plaintiff names the following Defendants in their individual and official capacities: (1) Practitioner Crosby, (2) Doctor Holland, (3) Nurse Clark, (4) Nurse Malone, (5) Nurse Stone, (6) Nurse Purdie, and (7) Charles B. Webster Detention Center.  (Doc. no. 1, pp. 2-4.)  Taking all of Plaintiff's allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

On January 28, 2024, while detained at Charles B. Webster Detention Center, Plaintiff filed a grievance informing jail officials concerning pain from a cyst inside his ear.  (Id. at 6.)

The cyst was a cholesteatoma[1] that was growing back after it was surgically removed prior to Plaintiff's imprisonment.  (Id.)  Plaintiff repeatedly filed sick calls and grievances seeking medical attention for the cyst.  (Id. at 6-10.)  When Nurses Purdie and Stone first evaluated Plaintiff's cyst, they noted he was bleeding from the ear but only administered neomycin drops that worsened the condition and failed to provide any further treatment or referral.  (Id. at 6.)  A grievance dated March 6, 2024, states this appointment occurred "two months prior."  (Doc. no. 1, p. 6.)

Throughout February and March 2024, Plaintiff continued to request additional consultations, file grievances, and voice his concerns to Nurses Clark, Purdie, and Stone when they conducted visits to his pod.  (Id.)  In the second week of March 2024, Dr. Holland gave Plaintiff ibuprofen, which did not fully alleviate his pain.  (Id. at 7.)  By March 27, the left side of Plaintiff's face began to droop, his left eye stopped closing, and he was diagnosed with Bell's palsy by Nurse Purdie and Practitioner Crosby.  (Id. at 7.)  Despite Plaintiff informing Practitioner Crosby that his symptoms were the result of his regrown cyst, Practitioner Crosby prescribed Bell's palsy medication and did not treat Plaintiff's cyst.  (Id.)

In May 2024, Dr. Lauren at Augusta ENT evaluated Plaintiff, scheduled a CAT scan and MRI, opined the cyst was damaging Plaintiff's facial nerve, and recommended emergency surgery.  (Id. at 8.)

---

[1] A cholesteatoma "is an abnormal growth in [the] middle ear behind [the] eardrum" that "develops when dead skin cells gather behind [the] eardrum to form a lump or cyst."  *Cholesteatoma*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/21535-cholesteatoma (last visited Feb. 3, 2025). "Without treatment, cholesteatomas may become infected or grow large enough to damage your hearing and facial nerve.  Surgery to remove the growth is the only way to treat a cholesteatoma."  Id.

In June 2024, Plaintiff filed sick calls when his ear began to secrete a mucus-like substance and his jaw began swelling. (Id.) Plaintiff was transported to the hospital to receive the prescribed CAT scan and MRI but was unable to obtain the scans because of his metal wrist ties. (Id.) In July 2024, Nurse Malone examined Plaintiff's ear and concurred with the Bell's palsy diagnosis but cut the visit short before recommending any treatment because she "got an attitude" and kicked Plaintiff out. (Id.) Plaintiff filed a grievance concerning his visit with Nurse Malone, explaining he was supposed to have emergency surgery following his visit with Dr. Lauren in May, the "whole left side of [his] face is dead," his eye won't close, and his symptoms are a result of the cyst and not Bell's palsy. (Id.)

On August 16, 2024, Plaintiff received an MRI. (Id. at 9.) On September 6, 2024, Plaintiff filed another grievance, explaining he was still waiting on emergency surgery and had been corresponding with Practitioner Crosby, who was seeking his CAT scan and MRI results. (Id. at 9.) Plaintiff asked Nurse Clark about surgery, but Nurse Clark dismissed him because "[he is] the reason she hates coming to the medical pod." (Id. at 9.)

On September 21, 2024, Plaintiff filed another grievance, alleging he had still not received MRI or CAT scan results, his face and ear were worsening, and nurses did nothing to help when he sought medical attention. (Id.) In late September, Practitioner Crosby evaluated Plaintiff and gave him Tylenol and an eye patch but she did not prescribe antibiotics or any other treatment. (Id.) Practitioner Crosby showed Plaintiff her treatment notes from February 2024, which documented Plaintiff informing her his face would begin to droop if the cyst was not treated. (Id.)

Plaintiff also visited Dr. Marc LuDac at Augusta University, who prescribed antibiotic and steroid drops for his ear. (Id.) Dr. LuDac wanted to test the efficacy of the antibiotics and

steroids before referral to a surgeon.  (Id. at 10.)  However, because of the delay in treatment, Dr. LuDac explained the cyst had caused irreparable harm to Plantiff's facial nerve, necessitating a future face lift and insertion of a weight inside the eye lid to keep it closed. (Id.)

As of the filing of the complaint, Plaintiff is unable to close his eye, his facial nerve is dead, and he cannot smile or talk normally.  (Id. at 11.)  Plaintiff has yet to receive any surgical treatment to correct the cyst or resulting damage to his eye and facial nerve.  (See id.)  For relief, Plaintiff requests proper medical care and monetary damages.  (Id.)

Liberally construing Plaintiff's allegations in his favor and granting him the benefit of all reasonable inferences to be derived from the facts alleged, the Court finds Plaintiff has arguably stated viable claims for medical deliberate indifference against Defendants Practitioner Crosby, Doctor Holland, Nurse Clark, Nurse Malone, Nurse Stone, and Nurse Purdie.[2]  See Wade v. McDade, 106 F.4th 1251, 1262 (11th Cir. 2024) (en banc); Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011) (per curiam) (collecting cases and explaining a defendant who provides "medical care that is so cursory as to amount to no treatment at all" or "delays necessary treatment for non-medical reasons" may exhibit deliberate indifference). In a companion Report and Recommendation, the Court recommends dismissal of Defendant Charles B. Webster Detention Center, as well as Plaintiff's official capacity claims for monetary damages against all Defendants.

---

[2] Although technically the Fourteenth Amendment Due Process Clause, rather than the prohibition on cruel and unusual punishment found in the Eighth Amendment, governs pretrial detainee claims, the nomenclature need not delay the Court because the standards are the same.  Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007).

### III.    INSTRUCTIONS

**IT IS HEREBY ORDERED** service of process shall be effected on Defendants Practitioner Crosby, Doctor Holland, Nurse Clark, Nurse Malone, Nurse Stone, and Nurse Purdie.  The United States Marshal shall mail a copy of the complaint, (doc. no. 1), and this Order by first-class mail and request that Defendant waive formal service of the summons.  Fed. R. Civ. P. 4(d).  Individual defendants have a duty to avoid unnecessary costs of serving the summons, and if a defendant fails to comply with the request for waiver, the defendant must bear the costs of personal service unless good cause can be shown for failure to return the waiver.  Fed. R. Civ. P. 4(d)(2).  A defendant whose return of the waiver is timely does not have to answer the complaint until sixty days after the date the Marshal mails the request for waiver.  Fed. R. Civ. P. 4(d)(3).  However, service must be effected within ninety days of the date of this Order, and the failure to do so may result in the dismissal of any unserved defendant or the entire case.  Fed. R. Civ. P. 4(m).  Plaintiff is responsible for providing sufficient information for the Marshal to identify and locate Defendants Practitioner Crosby, Doctor Holland, Nurse Clark, Nurse Malone, Nurse Stone, and Nurse Purdie to effect service.

**IT IS FURTHER ORDERED** Plaintiff shall serve upon the defendants, or upon their defense attorney(s) if appearance has been entered by counsel, a copy of every further pleading or other document submitted to the Court.  Plaintiff shall include with the papers to be filed a certificate stating the date a true and correct copy of any document was mailed to the defendant or their counsel.  Fed. R. Civ. P. 5; Loc. R. 5.1.  Every pleading shall contain a caption setting forth the name of the court, the title of the action, and the file number.  Fed. R. Civ. P. 10(a).  Any paper received by a District Judge or Magistrate Judge that has not been properly filed with the Clerk of Court or that fails to include a caption or certificate of service will be returned.

It is Plaintiff's duty to cooperate fully in any discovery that may be initiated by the defendants. Upon being given at least five days notice of the scheduled deposition date, Plaintiff shall appear and permit his deposition to be taken and shall answer, under oath and solemn affirmation, any question that seeks information relevant to the subject matter of the pending action. Failing to answer questions at the deposition or giving evasive or incomplete responses to questions will not be tolerated and may subject Plaintiff to severe sanctions, including dismissal of this case. The defendants shall ensure Plaintiff's deposition and any other depositions in the case are taken within the 140-day discovery period allowed by this Court's Local Rules.

Plaintiff must pursue this case; if Plaintiff does not press the case forward, the Court may dismiss it for want of prosecution. Fed. R. Civ. P. 41; Loc. R. 41.1. If Plaintiff wishes to obtain facts and information about the case from the defendants, Plaintiff must initiate discovery. See generally Fed. R. Civ. P. 26 through 37 (containing the rules governing discovery and providing for the basic methods of discovery). Plaintiff should begin discovery promptly and complete it within four months after the filing of the first answer of a defendant named in the complaint screened herein.

Interrogatories are a practical method of discovery for *pro se* litigants. See Fed. R. Civ. P. 33. Interrogatories shall not contain more than twenty-five questions. Id. Plaintiff must have the Court's permission to propound more than one set of interrogatories to a party. Discovery materials should not be filed routinely with the Clerk of the Court; exceptions include when the Court directs filing; when a party needs such materials in connection with a motion or response, and then only to the extent necessary; and when needed for use at trial. If Plaintiff wishes to file a motion to compel pursuant to Fed. R. Civ. P. 37, he should first contact the attorney for the defendant and try to work out the problem; if Plaintiff proceeds with the motion to compel, he

should also file a statement certifying that he has contacted opposing counsel in a good faith effort to resolve any dispute about discovery.  Loc. R. 26.5.

Plaintiff must maintain a set of records for the case.  If papers are lost and new copies are required, these may be obtained from the Clerk of the Court at the standard cost of fifty cents per page.

Under this Court's Local Rules, a party opposing a motion to dismiss shall file and serve his response to the motion within fourteen days of its service.  "Failure to respond shall indicate that there is no opposition to a motion."  Loc. R. 7.5.  Therefore, if Plaintiff fails to respond to a motion to dismiss, the Court will assume that there is no opposition to the defendant's motion and grant the dismissal.

A response to a motion for summary judgment must be filed within twenty-one days after service of the motion.  Loc. R. 7.5, 56.1.  A failure to respond shall indicate that there is no opposition to the motion.  Loc. R. 7.5.  Furthermore, each material fact set forth in a defendant's statement of material facts will be deemed admitted unless specifically controverted by an opposition statement.  Should a defendant file a motion for summary judgment, Plaintiff is advised that he will have the burden of establishing the existence of a genuine issue as to any material fact in this case.  That burden cannot be carried by reliance on the conclusory allegations contained within the complaint.  Should a defendant's motion for summary judgment be supported by affidavit, Plaintiff must file counter-affidavits if he desires to contest the defendant's statement of the facts.  Should Plaintiff fail to file opposing affidavits setting forth specific facts showing that there is a genuine issue for trial, the consequences are these:  any factual assertions made in the defendant's affidavits will be accepted as true and summary judgment will be entered against Plaintiff pursuant to Fed. R. Civ. P. 56.

**While this action is pending, Plaintiff shall immediately inform this Court and opposing counsel of any change of address. Failure to do so will result in dismissal of this case.**

SO ORDERED this 5th day of February, 2025, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA